UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOAN ALICE CANNON,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.
_____/

Hon. Jane M. Beckering

Case No. 1:23-cv-388

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act.

Section 405(g) limits the Court to a review of the administrative record and provides that, if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. Plaintiff seeks review of the Commissioner's decision, arguing that it is not supported by substantial evidence.

Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, I recommend that the Commissioner's decision be **affirmed**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is

limited to determining whether the Commissioner applied the proper legal standards and whether there exists in the record substantial evidence supporting the decision. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Fact finding is the Commissioner's province, and those findings are conclusive provided substantial evidence supports them. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla but less than a preponderance. *See Cohen v. Sec'y of Dept. of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In applying this standard, a court must consider the evidence as a whole, while accounting for any evidence that fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard contemplates a zone within which the decision maker can properly rule either way without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This standard affords the administrative decision maker considerable latitude and precludes reversal simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff protectively filed an application for DIB on November 11, 2020, and an application for SSI on November 24, 2020, alleging that she became disabled as of October 24, 2020, due to vitamin deficiency, brain aneurysm, migraines, headaches, depression, anxiety disorder, high blood pressure, high cholesterol, asthma, and stroke. (PageID.124, 135, 294–304.) Plaintiff was age 51 at the time of her alleged onset date. (PageID.124.) She had completed high

2

school and had past work as a motor vehicle assembler, a small products assembler, a visual inspector, an industrial cleaner, and a short order cook. (PageID.53–54, 345–46.) Plaintiff's application was denied initially and on reconsideration, and she requested a hearing before an Administrative Law Judge (ALJ).

On May 5, 2022, ALJ Robert Chavez held a telephone hearing and received testimony from Plaintiff and Joanne Pfeffer, an impartial vocational expert (VE). (PageID.64–91.) On June 2, 2022, the ALJ issued a written decision finding that Plaintiff was not entitled to benefits because she was not disabled from her alleged onset date through the date of the decision. (PageID.40–57.) The Appeals Council denied Plaintiff's request for review on March 1, 2023. (PageID.21–23.) The ALJ's ruling thus became the Commissioner's final decision. *See Cook v. Comm'r of Soc. Sec.*, 480 F.3d 432,434 (6th Cir. 2007). Plaintiff timely initiated this civil action for judicial review on April 17, 2023.

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

3

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that, if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functional capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

After determining that Plaintiff met the insured status requirements of the Act through December 31, 2025, and had not engaged in substantial gainful activity since her alleged onset date of October 24, 2020, the ALJ found that Plaintiff suffered from severe impairments of cerebral aneurysm of the proximal basilar artery; migraine headaches and/or recurrent occipital headaches; hypertension; asthma; obesity; major depressive disorder; anxiety; and post-traumatic stress disorder. (PageID.44.) At step three, the ALJ determined that Plaintiff did not have an impairment

---

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

or combination of impairments that met or medically equaled any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (PageID.45–48.) Regarding her mental impairments, the ALJ considered Listings 12.04, 12.06, and 12.15 and applied the "paragraph B" criteria, finding that Plaintiff was moderately limited in the areas of understanding, remembering, or applying information; concentrating, persisting, or maintaining pace; and adapting or managing oneself. The ALJ found that she was mildly limited in the area of interacting with others. (PageID.46–47.)

The ALJ then found that Plaintiff retained the RFC to perform a range of light work, as defined in 20 C.F.R. §§ 404.1567(b) 416.967(b), as follows:

> [S]he can lift, carry, push, and/or pull 20 pounds occasionally and 10 pounds frequently. The claimant can sit for six, stand for six, and walk for six hours of an eight hour workday. She can occasionally climb ramps and stairs. The claimant can never climb ladders, ropes, or scaffolds. She can never balance (as defined in the Dictionary of Occupational Titles). The claimant can occasionally kneel, stoop, crouch, and crawl. She can never work at unprotected heights or near moving mechanical parts. The claimant can tolerate occasional exposure to extreme temperatures, humidity, wetness, and vibration as those environmental conditions are defined in the Dictionary of Occupational Titles. The claimant can tolerate moderate noise levels. She can understand, remember, and carry out simple, routine, repetitive work that is not performed at a production rate pace; and is thus unable to learn tasks that require instruction beyond a short demonstration of up to one month to learn. The claimant can apply commonsense understanding to carry out detailed, but uninvolved written or oral instructions. She can deal with problems involving a few concrete variables, that vary in or from standardized situations. The claimant is able to utilize the judgment needed to make simple work-related decisions. She must have any major changes in her work setting/routine explained in advance in order to allow her time to adjust.

(PageID.48.)

At step four, the ALJ determined that Plaintiff was unable to perform her past relevant work (PageID.53–55), at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy that Plaintiff could perform. *See Richardson*, 735 F.2d at 964. Based on testimony from the VE, the ALJ found

that an individual of Plaintiff's age, education, work experience, and RFC could perform the jobs of collator operator, router, and document specialist, approximately 159,000 of which existed in the national economy. (PageID.56–57.) This represents a significant number of jobs. *See, e.g., Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'"). Therefore, the ALJ concluded that Plaintiff was not disabled.

## **DISCUSSION**

Plaintiff raises two issues in her appeal: (1) the ALJ's RFC determination is unsupported by substantial evidence as he inexplicably failed to incorporate any limitation for social interaction into the RFC, despite his finding at step two and its consistency with the medical source opinions of record; and (2) the ALJ's RFC determination is unsupported by substantial evidence as he committed legal error in evaluating the opinion of Jeffrey Lee, NP-C. (ECF No. 11 at PageID.804.)

**I.    Mild Limitation in Interacting with Others**

Plaintiff's first argument, which pertains to the ALJ's step-three finding that Plaintiff was mildly limited in the area of interacting with others, is not entirely clear.[2] On one hand, she frames her claim of error as the ALJ's RFC finding not being supported by substantial evidence because he failed to include any limitation for social interaction despite his own step-three finding of a mild limitation in interacting with others. (ECF No. 11 at PageID.804, 812.) On the other hand, Plaintiff says that "[i]t is the ALJ's failure to explain why a limitation in social interaction was not incorporated into the RFC that is the error in this case." (*Id.* at PageID.813.) Regardless, Plaintiff fails to demonstrate error.

In his step-three discussion regarding the "paragraph B" factors, the ALJ found:

---

[2] Plaintiff erroneously refers to the ALJ's step-two mild limitation finding. The ALJ actually made this finding at step three. (PageID.46.)

> [I]n interacting with others, I find the claimant has mild limitation. Specifically, the claimant has reported that she prefers to have company while going out. However, she also reported that she had friends and was able to share housing with her friends. The claimant reported having good relationships with family members and others (B4E). Her care providers observed the claimant's mood was usually normal. The claimant's care providers observed the claimant was usually oriented to person and her behavior was normal during treatment visits (B1F:35 and B4F:14,48). During the May 2022 telephone hearing, the claimant had no obvious problems communicating and following instructions. Her mood was likewise normal (testimony).

(PageID.46–47.)

To the extent Plaintiff's argument is that the ALJ was required to include a social interaction limitation in his RFC determination based on his step-three finding of a mild limitation in that area, the argument fails because, as the ALJ noted in his step-three analysis, "the limitations identified in the 'paragraph B' criteria are not a [RFC] assessment." (PageID.47.) Instead, the ALJ noted, "[t]he mental [RFC] assessment used later in this decision requires a more detailed assessment by itemizing various functions."[3] (*Id.*) *See* SSR 96-8p, 1996 WL 374184, at *4 (1996) (noting that "the limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process"); *Ceol v. Berryhill*, No. 3:15-CV-315, 2017 WL 1194472, at *10

---

[3] Plaintiff contends that the present circumstances are similar to those in *Richardson v. Saul*, 511 F. Supp. 3d 791 (E.D. Ky. 2021), in which the court found that the ALJ erred by failing to explain why he did not incorporate *any* mental limitations in his RFC determination. Plaintiff's argument is unpersuasive as the circumstances in *Richardson* were dissimilar from those presented here. In *Richardson*, the ALJ found no more than mild limitations at step 2 and subsequently stated that his RFC determination reflected the degree of limitation found at step 2. However, the ALJ also gave great weight to a psychologist's opinion that concluded that the claimant had "mild to moderate" mental limitations. In light of these circumstances, the court was particularly concerned about the ALJ's failure to explain why he had omitted any mental limitations at all, which the psychologist's opinion appeared to support. *Id.* at 798–99. Here, the ALJ not only included mental limitations, but specifically discussed Plaintiff's mental impairments and the evidence supporting the limitations he included in the RFC. (PageID.50–51.) He also adopted, with additional limitations, the mental RFC opined by the state agency psychologists (with additional limitations), which he found generally persuasive. (PageID.48, 53.)

E.D. Tenn. Mar. 30, 2017) ("Therefore, a finding by the ALJ that the Plaintiff has mild limitations in the areas of daily living activities, social functioning, and concentration, persistence, or pace, does not necessarily mean that the Plaintiff will have corresponding limitations with regard to her RFC."); *Stachnik v. Comm'r of Soc. Sec.*, No. 1:17-cv-22, 2018 WL 1402155, at *4 (W.D. Mich. Feb. 26, 2018), *report and recommendation adopted*, 2018 WL 1382341 (W.D. Mich. Mar. 18, 2018) ("The ALJ's step–3 findings do not undermine his finding that plaintiff retained the RFC for simple, routine tasks that could be learned after a short demonstration or within thirty days."). Moreover, courts have found that "mild limitations do not require incorporation into an RFC." *Burrell v. Comm'r of Soc. Sec.*, No. 14-14529, 2016 WL 1165994, at *10 (E.D. Mich. Feb. 29, 2016), *report and recommendation adopted*, 2016 WL 1161548 (E.D. Mich. Mar. 23, 2016) (citing *Boley v. Astrue*, No. 11-10896, 2012 WL 680393, at *14 (E.D. Mich. Feb. 10, 2012), *report and recommendation adopted*, 2012 WL 680392 (E.D. Mich. Mar. 1, 2012)); *accord Plotkowski v. Comm'r of Soc. Sec.*, No. 2:20-cv-12011, 2022 WL 413371, at *7 (E.D. Mich. Jan. 18, 2022), *report and recommendation adopted*, 2022 WL 407079 (E.D. Mich. Feb. 9, 2022) (noting cases finding that the lack of reference to a mild psychological limitation in the RFC did not constitute error); *Carroll v. Comm'r of Soc. Sec.*, No. 1:16CV2875, 2018 WL 550671, at *8 (N.D. Ohio Jan. 5, 2018), *report and recommendation adopted*, 2018 WL 501306 (N.D. Ohio Jan. 22, 2018) ("The ALJ was not required to include mild mental limitations in the RFC."). Some courts have found that an ALJ errs in failing to include a mild limitation in an RFC determination where the ALJ does not mention the mental impairment in his RFC analysis. *See Shamsud-Din v. Comm'r of Soc. Sec.*, No. 16-cv-11818, 2017 WL 3574694, at *6 (E.D. Mich. July 24, 2017), *report and recommendation adopted*, 2017 WL 3531438 (E.D. Mich. Aug. 17, 2017). Here, however, the ALJ

8

expressly discussed Plaintiff's mental impairments in determining Plaintiff's RFC and found that the evidence supported the mental limitations he included. (PageID.50–51.)

Plaintiff's argument also lacks merit to the extent she contends the ALJ failed to adequately explain his reasoning for not including social limitations in his RFC finding. In addition to his step-three finding set forth above, the ALJ considered Plaintiff's mental impairments in his RFC discussion. Considered together, the ALJ's discussion demonstrates that he found that Plaintiff's mild limitation did not affect her ability to work. Moreover, the state agency psychologists found that, although Plaintiff had mild limitations in interacting with others, such limitations did not translate into any functional limitations. (PageID.139, 144, 163–64.) The ALJ found this opinion "generally persuasive," in part, because it was consistent with the observations of Plaintiff's providers during the relevant period (PageID.53), which the ALJ cited in his step-three finding. The ALJ's discussion thus creates a logical bridge between his step-three finding and his determination that the evidence did not warrant any social interaction limitation. *See Mark M. v. Kijakazi*, No. 1:22-CV-66, 2023 WL 5202265, at *3 (W.D. Ky. Aug. 14, 2023). Finally, although Plaintiff cites evidence she claims supports her contention that she had some difficulty getting along with others, the evidence does not support this contention. (PageID.608–09, 616–17.) In any event, her argument is simply an invitation for the Court to reweigh the evidence, which it may not do. Thus, this argument lacks merit.

**II.     Physical Work Capacity Opinion of Jeffrey Lee, NPC**

The ALJ evaluated the medical opinions pursuant to 20 C.F.R. §§ 404.1520c and 416.920c. Under that regulation, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)," even an opinion from a treating source. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, an ALJ will articulate his or her determination of the persuasiveness of a medical opinion "in a single analysis

9

using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate." 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1). Those factors include: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1520c(1)–(5), 416.920c(c)(1)–(5). In general, the ALJ must explain his or her consideration of the supportability and consistency factors, but is not required to explain how the remaining factors were considered. 20 C.F.R. §§ 404.l520c(b)(2) and (3), 416.920c(b)(2) and (3).

The ALJ is to conduct this analysis with regard to all opinions, but is not required to give controlling weight to an opinion from any particular source. The former rule, well-known as "the treating physician rule[, thus] no longer applies." *See Takacs v. Kijakazi*, No. 1:20-cv-02120, 2022 WL 447700, at *9 (N.D. Ohio Jan. 26, 2022), *report and recommendation adopted*, 2022 WL 445767 (N.D. Ohio Feb. 14, 2022). "'Although the new standards are less stringent in their requirements for the treatment of medical opinions, they still require that the ALJ provide a coherent explanation of [his] reasoning.'" *Sadger v. Comm'r of Soc. Sec.*, No. 2:20-cv-11900, 2021 WL 4784271, at *13 (E.D. Mich. Aug. 23, 2021), *report and recommendation adopted*, 2021 WL 4316852 (E.D. Mich. Sept. 23, 2021) (quoting *White v. Comm'r of Soc. Sec.*, No. 1:20-CV-588, 2021 WL 858662, at *21 (N.D. Ohio Mar. 8, 2021)).

On January 27, 2021, Plaintiff's treating provider, Jeffrey Lee, NP-C issued a Physical Assessment statement setting forth Plaintiffs' diagnosis (aneurysm of the brain), medication side effects, and Mr. Lee's opinions concerning Plaintiff's functional limitations. (PageID.567–68.) The ALJ summarized and evaluated the opinion as follows:

> Nurse Lee opined the claimant had reaching, handling, and fingering limitations. Nurse Lee opined the claimant could lift 20 pounds occasionally and 10 pounds frequently; sit for five hours of an eight hour workday; stand/walk for one hour of an eight hour workday; could walk no more than a block; needed to take

10

> unscheduled breaks every hour; needed to be allowed to lie down during the day, and would be expected to be absent from work three or four times each month (Jan 2021, B3F). I find Nurse Lee is an acceptable source for physical work capacity assessments. However, his opinions are not supported. Specifically, as explained throughout this finding the evidence supports my finding that the claimant's aneurysm, obesity, and asthma limit her to light level work with postural limitations. However, there are no studies of the claimant's upper extremities or neck to justify assigning reaching, handling, or fingering limitations. There are no studies of the claimant's spine or lower extremities to justify limiting the claimant to walking only one block; only five hours of sitting; or only one hour of standing/walking. There is no evidence of circulation problems or other similar impairments to support finding the claimant needs to lie down during the day. There is no evidence the claimant regularly misses appointments or would regularly be absent from work. For these reasons, I find Nurse Lee's opinion regarding the claimant's physical work capacity is not persuasive.

(PageID.51.)

Plaintiff contends that the ALJ failed to properly evaluate the opinion. "[S]upportability relates to the extent to which a medical source has articulated support for the medical source's own opinion, while consistency relates to the relationship between a medical source's opinion and other evidence within the record." *Cook v. Comm'r of Soc. Sec.*, No. 6:20-cv-1197, 2021 WL 1565832, at *3 (M.D. Fla. Apr. 6, 2021), *report and recommendation adopted*, 2021 WL 1565162 (M.D. Fla. Apr. 21, 2021); *see* 20 C.F.R. §§ 404.1520c(1)–(2), 416.920c(1)–(2); *Conklin v. Kijakazi*, No. 21-CV-8486, 2023 WL 104829, at *12–13 (S.D.N.Y. Jan. 5, 2023) (stating that "supportability" "has to do with the fit between the medical opinion offered by the source and the underlying evidence and explanations 'presented' by that source to support her opinion," and "[c]onsistency is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record, not just what a medical source had available to them" (internal quotation marks omitted)). In evaluating an opinion, "an ALJ need not use the precise words 'supportability' or 'consistency,' so long as he or she has explained how those two 'most important' factors were considered in determining the persuasiveness of each opinion." *Tracy F.*

11

*v. Comm'r of Soc. Sec.*, No. 2:23-cv-188, 2023 WL 8614065, at 5 (S.D. Ohio Dec. 13, 2023) (quoting 20 C.F. R. § 404.1520c(b)(2))

The ALJ summarily concluded that Mr. Lee's opinions were "not supported," but his statement was accurate; Mr. Lee failed to articulate the basis for his opinions or cite objective medical evidence or clinical findings to support them. (PageID.567–68.) As for consistency, the ALJ pointed to evidence supporting his finding elsewhere in the decision that, in spite of her impairments, Plaintiff could perform light work with postural limitations. He also noted the absence of evidence in the record—medical and non-medical—supporting Mr. Lee's opined limitations. Plaintiff contends that the ALJ's observations—specifically those regarding lack of record support for unscheduled breaks/need to lie down and absenteeism—were misguided because her headaches, not "circulation problems" or "other similar impairments," support these limitations. More specifically, she points to her hearing testimony regarding her migraine/headache symptoms and how they affect her, as well medical records documenting daily chronic migraines and medication treatment that she received to support these limitations. (ECF No. 11 at PageID.818–19.)

First, regarding absenteeism, Plaintiff fails to refute the ALJ's rationale—no significant history of missed appointments—for discounting Mr. Lee's opinion that Plaintiff would be absent three or four days per month due to her impairments. That is, apart from her headaches, she points to no evidence in the record contradicting this observation. *See Morris v. Berryhill*, No. 1:17-CV-212, 2019 WL 1129990, at *10 (E.D. Mo. Mar. 12, 2019) (concluding that the ALJ properly discounted a treating psychiatrist's opinions concerning absenteeism where there was "no evidence that Plaintiff was frequently late to, or failed to show up for, her appointments with [the psychiatrist] or other providers"). As for Plaintiff's headaches, the ALJ discussed them in

conjunction with her aneurysm in his RFC analysis, as she reported them as secondary to the aneurysm. In particular, the ALJ noted that although Plaintiff had a history of aneurysm and headaches dating to March 2018, she was able to perform light and semiskilled work as a short order cook for almost a year, from November 2019 to October 2020. (PageID.50, 346.) Plaintiff testified at the hearing that she was fired from this position for reasons unrelated to her impairments. (PageID.49, 53, 72–73.) The ALJ noted that, although Plaintiff was reporting muscle weakness, headaches, and cognitive problems just prior to her alleged onset date, brain scans showed that the aneurysm was stable, and upon clinical examination, she was observed walking and moving about normally, was fully oriented, and was alert and able to follow three-step commands. (PageID.421–23.) He further noted the absence of evidence following the alleged onset date that Plaintiff had been treated for her aneurysm and that physical examinations within months after her alleged onset date had been essentially normal, with no neurological deficits. (PageID.597, 604, 611.) He also found no evidence that Plaintiff's medications, including her headache medications, had been ineffective or that her aneurysm had been disturbed. (PageID.50.) Finally, the ALJ fully considered Plaintiff's hearing testimony about how her headaches affected her ability to work, but he concluded that the evidence as a whole did not show that her headaches were disabling. (PageID.49, 53.)

Although the ALJ did not cite the foregoing evidence in the same paragraph discussing Mr. Lee's opinions, he was not required to repeat it. *See Crum v. Comm'r of Soc. Sec.*, 660 F. App'x 449, 457 (6th Cir. 2016) (observing that the ALJ was not required to restate a list of treatment notes when explaining why she found a treating physician's opinion inconsistent with record, as it was sufficient that the records were listed elsewhere in the decision); *Flanary v. Saul*, No. 6:20-CV-00189, 2021 WL 5577798, at *5 (E.D. Ky. Nov. 29, 2021) (finding ALJ "did not need to

repeat all the medical evidence that undercut [doctor's] opinion because she listed that evidence elsewhere in her opinion"). Based on the foregoing, I conclude that the ALJ properly evaluated the persuasiveness of Mr. Lee's opinion, and that his finding of "not persuasive" is supported by substantial evidence.

Accordingly, this argument lacks merit.

## CONCLUSION

For the foregoing reasons, I recommend that the Commissioner's decision be **affirmed**.

Dated: January 8, 2024 /s/ Sally J. Berens
SALLY J. BERENS
U.S. Magistrate Judge

## NOTICE

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within that time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).